JONATHAN H. BUTLER, for the use of the Northampton Bank, Appellant, *v.* ZERAH CHAPIN, and JACOB R. CHAPIN, Appellees.

### APPEAL FROM HENRY.

Where the makers of a note have been informed that it has been transferred, if they afterwards pay to the payee, they do so in their own wrong, and will be held liable to the indorsee.

A gave his note to B, and the latter indorsed it to a bank; A was notified that the bank held the note, and he promised to pay to the bank; A afterwards paid the note to B, without receiving the note, B telling him it was lost or mislaid. *Held,* that the bank could recover from A.

THIS was an action of assumpsit, commenced by appellant against appellees, in the June special term of the Henry Circuit Court, upon a promissory note. To the plaintiff's declaration the defendants interposed four pleas: 1st. General issue. 2nd. That the defendants paid said note on the 12th day of January, 1859, to one John Parshley, agent, who was then and there the real owner of said note and entitled to receive payment thereof, and that he received said payment in full satisfaction of said note. 3rd. That the defendants paid said note on the 12th day of January, 1859, to one John Parshley as agent of one Bela Sawyer, who was then the real owner of said note and entitled to receive payment thereof, and who then received payment thereof by said John Parshley as such agent, in full satisfaction of said note. 4th. That the said defendants paid said note on the 12th day of January, 1859, to Bela Sawyer, who was then the real owner of said note, and entitled to receive payment thereof.

On the first plea the plaintiff took issue. To the second plea the plaintiff replied: 1st, That the said John Parshley was not, to wit, on the 12th day of January, 1859, at the time of said alleged payment, then the owner of said note and entitled to receive payment of the same; and, 2nd, that said defendants did not pay said note to the said John Parshley, agent. To the third plea the plaintiff replied: 1st, That the said Bela Sawyer was not, to wit, on the 12th day of January,

1859, then the owner of said note; and, 2nd, that the said defendants did not, to wit, on the 12th day of January, 1859, pay said note to Bela Sawyer, by John Parshley, agent. To the fourth plea the said plaintiff replied : 1st, That the said Bela Sawyer was not, to wit, on the 12th day of January, 1859, at the time of said alleged payment of said note, the owner of said note; and, 2nd, that said defendants did not, to wit, on the 12th day of January, 1859, pay said note to said Bela Sawyer.

On the 30th of October, 1861, said cause came on for hearing on the issues before HEATON, Judge, and a jury. The plaintiff first offered in evidence the note sued on, of which the following is a copy, to wit:

"$546.72.                                    WETHERSFIELD, ILL., Nov. 27th, 1856.

"Nine months from date, for value rec'd, we, (Zerah Chapin and J. R. Chapin,) jointly and severally promise to pay, to the order of Z. & J. R. Chapin, Five Hundred Forty-six and Seventy-two One-hundredths Dollars, at the Banking House of Preston, Bowers & Co., Kewanee, Henry county, Ill.

(Signed)                                         ZERAH CHAPIN.
                                                 J. R. CHAPIN."

Charles White, cashier, and John Whittlesey, teller, of the Northampton Bank, both testify that John Parshley, agent, indorsed the note declared on in this suit, to the Northampton Bank, August 17, 1857; that John Parshley, agent, then held and claimed to own it, and that they then knew no other claimant of the note. On the 20th of the same month, the bank forwarded the note to the American Exchange Bank, N. Y., for collection. On the 30th of August, 1857, said note became due. On the 12th of September, 1857, the cashier of said Northampton Bank paid John Parshley, agent, on said note, and in consideration of said note, in and at said bank, the sum of $400, supposing that it had been paid, because more than sufficient time had elapsed to have heard that it had not been paid after it became due. On the 20th of September, 1857, said note was returned to the Northampton Bank unpaid, by the American Exchange Bank, N. Y., which was the first notice the bank had that it had not been honored. On cross-examination they both state that at the time the note fell due, John Parshley's agency account was good for $3.48, and that

Butler, use, etc., *v.* Chapin *et al.*

a balance of $3.48 remained to his credit from August 17, 1857, to September 12, 1857, since which last named date nothing has been due him on account; that John Parshley had no account with said bank except as agent; that John Parshley, agent, never obtained leave of the cashier of said bank to overdraw his account independent of the Chapin note. The bank called upon Parshley, soon after the note was returned unpaid, for the amount of his overdrawn account, and the bank called on him several times within three years. On the 22nd of September, 1857, two days after the note was returned unpaid, the cashier wrote the following letter to the defendants:

"NORTHAMPTON, MASS., Sept. 22, 1857.

"Messrs. ZERAH & J. R. CHAPIN, Esqs. Sirs: Your note for $546.72, favor of John Parshley, has been returned to the bank unpaid. Please forward funds to pay it on receipt of this, or I shall call on Mr. Parshley at once.

Respectfully yours,

CHAS. WHITE, Cash'r."

The defendants answered the above letter as follows:

"WETHERSFIELD, ILL., Sept. 29, 1857.

" CHAS. WHITE, Esq., Cashier. Sir: Yours of the 22nd came to hand last evening. In regard to the note left with you for collection, in favor of John Parshley, we would say we will pay it between the 10th and 15th of next month. If you wish reference, we will give you Preston, Bowers & Co., Kewanee, Ill., or, if necessary, Morse, Loomis & Co., Commission Merchants, Chicago. We will send you then a draft on New York, or some Massachusetts bank, or by express, as you wish.                    CHAPIN BROTHERS."

John Parshley testifies that he executed the following receipt (as agent for Bela Sawyer, and should have so signed it):

" Rec'd, Urbana, Champaign county, Ohio, January 12th, 1859, of Zerah and J. R. Chapin, the full amount of a note I held, which is as follows:

' $546.72.                    WETHERSFIELD, ILL., Nov. 27, 1856.

' Nine months after date, for value rec'd, we, (Zerah Chapin and J. R. Chapin,) jointly and severally promise to pay to the order of Z. & J. R. Chapin, Five Hundred Forty-six and Seventy-two One-hundredths Dollars, at the Banking House of Preston, Bowers & Co., of Kewanee, Henry county, Ill.

ZERAH CHAPIN.

J. R. CHAPIN.'

and indorsed ' Z. & J. R. Chapin,' which note is now either mislaid or lost; and now I do hereby acknowledge the full payment, and interest thereon, of said note, and that I will hold them harmless against the said note, and that the note, if it

ever comes to light, it shall be given up to the said Chapins, without further payment of the said note, or interest°or cost thereon.

JOHN PARSHLEY."

The issues were found for the defendants below, who recovered a judgment for costs.

The plaintiff below appealed.

Howe & North, for Appellees.

Walker, J. The note in controversy was indorsed by the agent of the payees, to the Northampton Bank, on the 17th day of August, 1857. On the 20th day of the same month, it was forwarded by the bank to the American Exchange Bank, New York, for collection. It matured on the 30th, and on the 12th of September the bank paid to the agent of the payee, who indorsed the note, the sum of $400, under the supposition that the note had been paid by the makers, to the Exchange Bank. But, on the 20th of September, it was returned to the Northampton Bank, unpaid. Parshley, the agent of the payee, afterwards, on the 12th day of January, 1859, received of the makers the full amount of the note, and gave to them a receipt, in which it is recited, that the note had been lost or mislaid. This payment was made after notice to the makers, that the note had been returned unpaid to the Northampton Bank. They, by letter, on the 29th of September, acknowledged the receipt of this notice, and promised to pay the note to the bank, between the 10th and 15th of October following.

This then presents the question, whether the makers were protected in paying the note to Parshley under these circumstances. The note was payable to the order of the makers, and indorsed by Parshley, their agent. The note, by this indorsement, for the first time became operative as such, and thereby became payable to the assignee, or if, as in this case, the indorsement was general, then to the holder who should receive it in the regular course of business. It appears, that the Northampton Bank received it for collection, so indorsed, and sent it forward for collection; and after waiting a sufficient time to have received notice of its dishonor if it had not been

16

met, paid on it the four hundred dollars. The bank received the note before it was due, and paid the money to Parshley, in perfect good faith, so far as can be discovered from the evidence embodied in the record. The bank gave the requisite notice to the makers, sufficient to have put them upon inquiry. They knew the bank had the note on the 22nd of September, 1857, and that Parshley did not have it in his possession when they made the payment. They do not seem to have made any inquiry of the bank to learn what disposition, if any, it had made of the note. They knew that the bank had held it, and they had promised to pay it to the bank.

The indorsement of the note vested the legal title of the note in the bank. Yet the equitable title remained in the payees. When, however, the bank paid Parshley's check, on the strength of the note, the equitable title became united with the legal title in the bank. Or if the note was made to enable Parshley to raise money, when it was indorsed to the bank, it was thereby made payable to the bank, and it had the right to sue and recover the money. Even if Parshley is to be believed when he says that he had the note after it was dishonored, it may be that it was handed to him in the confidence that he would collect and hand the money to the bank. But there is no evidence that appellees knew that he had, for any purpose, repossessed himself of the note, and when he returned it to the bank, it was the same as though it had not been delivered to him.

If one of two innocent persons must sustain a loss, it must be borne by him who has contributed to it, or has acted with negligence of his rights. In this case the bank had employed every reasonable caution to protect its interests, by giving notice that it was the holder; and the presumption prevailing that when a fact is shown to exist, it continues until shown to have ceased, it was incumbent on the makers to institute inquiry, whether or not the note was still held by the bank before they paid it to another. They had no right to presume that Parshley had again become the owner of the instrument, simply because he affirmed the fact. The bank having been guilty of no negligence, and the makers having paid the money in their own wrong, they must sustain the loss.

The judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*